1  Carolyn Hunt Cottrell (SBN 166977)
   David C. Leimbach (SBN 265409)
2  Michelle S. Lim (SBN 315691)
   Scott L. Gordon (SBN 319872)
3  SCHNEIDER WALLACE
   COTTRELL KONECKY
4  WOTKYNS LLP
   2000 Powell Street, Suite 1400
5  Emeryville, California 94608
   Telephone: (415) 421-7100
6  Facsimile: (415) 421-7105

7  Attorneys for Plaintiff and the Putative Classes and Collective

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10 MARCELLOUS ROSS, individually and on      Case No. _____
   behalf of all others similarly situated,
11                                            CLASS AND COLLECTIVE ACTION
            Plaintiff,                        COMPLAINT
12
   vs.                                        (1) **Violations of the Fair Labor Standards
13                                                Act (29 U.S.C. §§ 201 *et seq.*)**
                                              (2) **Failure to Pay for All Hours Worked (Cal.
14 CERTIFIEDSAFETY, INC.; CHEVRON                  Labor Code § 204);**
   CORPORATION; CHEVRON U.S.A.                (3) **Failure to Pay Minimum Wage &
15 INC.; VALERO ENERGY                             Liquidated Damages (Labor Code §§
   CORPORATION; and VALERO                         1182.11, 1182.12, 1194,1197, and 1197.1)**
16 REFINING COMPANY-CALIFORNIA,             (4) **Failure to Pay Overtime Wages (Cal. Labor
                                                  Code § 510);**
17          Defendants.                       (5) **Failure to Authorize and Permit and/or
                                                  Make Available Meal and Rest Periods (Cal.
18                                                Labor Code §§ 226.7 and 512);**
                                              (6) **Failure to Reimburse for Necessary
19                                                Business Expenditures (Cal. Labor Code §
                                                  2802);**
20                                            (7) **Failure to Provide Timely and Accurate
                                                  Itemized Wage Statements (Cal. Labor
21                                                Code § 226);**
                                              (8) **Waiting Time Penalties (Cal. Labor Code §§
22                                                201-203);**
                                              (9) **Unlawful Business Practices (Cal. Bus. &
23                                                Prof. Code §§ 17200 *et seq.*);**

24

25                                            **DEMAND FOR JURY TRIAL**

26

27

28
   _____
            CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
                    *Marcellous Ross v. CertifiedSafety, Inc., et al.*

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiff Marcellous Ross, on behalf of himself and all others similarly situated ("Plaintiff"), complains and alleges as follows:

## INTRODUCTION

1.    Plaintiff bring this class and collective action on behalf of himself and other similarly situated individuals who have worked for CertifiedSafety, Inc. ("CertifiedSafety"); Chevron Corporation; Chevron U.S.A. Inc.; Valero Energy Corporation; and Valero Refining Company-California (collectively, the "Refineries;" CertifiedSafety and Refineries are collectively referred to as "Defendants") as non-exempt, hourly employees, including Safety Attendants and Safety Foremen. CertifiedSafety and the Refineries employ Plaintiff and putative Class and Collective members as joint employers. Plaintiff challenges CertifiedSafety's and the Refineries' violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA") and California wage and hour laws.

2.    This is a class action against Defendants to challenge their policies and practices of: (1) failing to compensate Plaintiff and putative Class and Collective members for all hours worked; (2) failing to pay Plaintiff and putative Class and Collective members minimum wage for all hours worked; (3) failing to pay Plaintiff and putative Class and Collective members overtime and double time wages; (4) failing to authorize and permit Plaintiff and the putative Class members to take meal and rest breaks to which they are entitled by law and pay premium compensation for missed breaks; (5) failing to reimburse Plaintiff and putative Class and Collective members for necessary business expenditures; (6) failing to provide Plaintiff and putative Class members accurate itemized wage statements; and (7) failing to timely pay Plaintiff and putative Class members wages upon the termination of employment.

3.    Plaintiff and members of the putative Class and Collective are current and former non-exempt, hourly Safety Attendants and Safety Foremen, who worked for Defendants throughout the United States, including but not limited to California.  These employees provide support for Defendants' operations, including but not limited to safety supporting operations and

protocols, and identifying, mitigating, and reporting potential safety hazards at Defendants' worksites.

4.    Plaintiff and putative Class and Collective members work long hours. Plaintiff and putative Class and Collective members are regularly scheduled to work, and in fact work, twelve hour shifts for seven or more consecutive days. Beyond the scheduled hours for which Plaintiff and putative Class and Collective members are scheduled to work, Plaintiff and putative Class and Collective members are also required to work before and after scheduled shifts, without compensation. Additionally, Plaintiff and putative Class and Collective members are required to attend day-long or multi-day training sessions, and are not compensated for their time spent in these trainings or for their time traveling to the training sites.

5.    Defendants assign Plaintiff and putative Class and Collective members to work at specific refineries for periods ranging up to several months. Defendants, including Refineries, initiate contact and enter into employment agreements with putative Class and Collective members in their home states, including California, to arrange the assignments and related training. This is true even for assignments outside Class and Collective members' home states.

6.    CertifiedSafety and Refineries jointly require Plaintiff and putative Class and Collective members to attend training in their home state. Putative Class and Collective members were required to attend training held in the State of California, even when the job assignment was to take place outside the State of California. The training is controlled, dictated, and conducted by the particular Refinery, can last up to an entire day, and is required by each Refinery. Moreover, CertifiedSafety and Refineries jointly negotiated and consummated employment agreements with Plaintiff within the State of California for each assignment. On this basis, an employment relationship exists in California between Plaintiff, putative California Class members, and each of the Defendants. Defendants, however, do not compensate Class and Collective members for all of their time spent in training, or the time it takes Class and Collective members to travel to training sessions.

7.    Following pre-assignment training, Plaintiff and putative Class and Collective members travel to work locations at the designated refinery, often far from home and out of state, without adequate reimbursement.  Refineries set the terms for this inadequate reimbursement in Class and Collective member's home states.

8.    Once Plaintiff and putative Class and Collective members report to and begin their work assignments, Plaintiff and putative Class and Collective members are not paid minimum wage for all hours worked, overtime rates or double time rates, as appropriate, for all hours worked above eight per day and forty per week.  Plaintiff and putative Class and Collective members are also routinely denied meal and rest periods.  Plaintiff and putative Class and Collective members do not receive accurate, itemized wage statements reflecting the hours they actually work and the amount of wages and overtime to which they are entitled and for which they should be compensated.  Nor are Plaintiff and putative Class and Collective members paid all amounts owed following voluntary or involuntary termination of employment.

9.    Plaintiff and putative Class and Collective members must also pay work expenses out of pocket, without adequate reimbursement.  For example, Plaintiff and the putative Class and Collective are not reimbursed for tools and protective gear necessary to safely complete their jobs.  Further, while Plaintiff and putative Class and Collective members may receive a per diem to mitigate the cost of lodging and other work related expenses when working at refinery sites far from home, the amount allocated is regularly insufficient to cover all these expenses. Plaintiff and Class and Collective members are not adequately compensated for travel expenses to and from worksites.

10.    As a result of these violations, Plaintiff seek compensation, damages, penalties, and interest to the full extent permitted by the FLSA, as well as the wage, hour, labor, and other applicable laws of the State of California as described herein.

11.    Plaintiff seeks full compensation on behalf of himself and all others similarly situated for all unpaid wages, including overtime and double time, all denied meal and rest periods, unreimbursed business expenses, inaccurate wage statement penalties, and waiting time penalties.

12. Plaintiff also seeks declaratory, equitable, and injunctive relief, including restitution.

13. Finally, Plaintiff seeks reasonable attorneys' fees and costs under the FLSA and applicable laws of the State of California, as described herein.

## PARTIES

14. Plaintiff and putative Class and Collective members are current and former Safety Attendants and Safety Foreman who work for Defendants throughout the United States, including in California.

15. Plaintiff is an individual over the age of eighteen, and at all times mentioned in this Complaint was a resident of the State of California. Plaintiff has been employed by CertifiedSafety as a Safety Attendant from 2002 to 2018.

16. Plaintiff is informed, believes, and alleges that CertifiedSafety is an American company that provides skilled safety personnel to clients operating oil refineries. CertifiedSafety provides services to clients with oil refineries throughout California and throughout the United States. CertifiedSafety maintains its headquarters in League City, Texas, and does business throughout the United States, including California. Plaintiff is further informed, believes, and thereon alleges that CertifiedSafety employs hourly, non-exempt Safety Attendants and Safety Foreman throughout the United States, including in California.

17. Plaintiff is informed, believes, and alleges that Defendant Chevron Corporation is an American corporation that refines and markets petroleum products. On information and belief, Chevron Corporation operates oil refineries in California and the United States, where Plaintiff and the putative Class and Collective members work in safety roles. Chevron Corporation maintains its headquarters in San Ramon, California, and does business in California. Plaintiff worked for CertifiedSafety and Chevron Corporation as joint employers at one or more Chevron refineries in California from approximately 2005 to the present.

18. Plaintiff is informed, believes, and alleges that Defendant Chevron U.S.A. Inc. is an American corporation that refines and markets petroleum products. On information and belief, Chevron U.S.A. Inc. is a related entity to Chevron Corporation. On information and belief,

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Marcellous Ross v. CertifiedSafety, Inc., et al.*

1  Chevron U.S.A. Inc. operates oil refineries in California and the United States, where Plaintiff and

2  the putative Class and Collective members work in safety roles. Chevron U.S.A. Inc. maintains its

3  headquarters in San Ramon, California, and does business in California. Plaintiff worked for

4  CertifiedSafety and Chevron Corporation as joint employers at one or more Chevron refineries in

5  California from approximately 2005 to the present.

6       19.    Plaintiff is informed, believes, and alleges that Defendant Valero Energy Corporation

7  is an American corporation that refines and markets petroleum products. On information and

8  belief, Valero Energy Corporation operates oil refineries in California and the United States, where

9  Plaintiff and the putative Class and Collective members work in safety roles. Valero Energy

10 Corporation maintains its headquarters in Wilmington, Delaware, and does business in California.

11 Plaintiff worked for CertifiedSafety and Valero Energy Corporation as joint employers at one or

12 more Valero refineries in California from approximately June 2018 to August 2018.

13      20.    Plaintiff is informed, believes, and alleges that Defendant Valero Refining Company

14 – California is an American corporation that refines and markets petroleum products. On

15 information and belief, Valero Refining Company – California is a related entity to Valero Energy

16 Corporation.  On information and belief, Valero Refining Company – California operates oil

17 refineries in California and the United States, where Plaintiff and the putative Class and Collective

18 members work in safety roles. Valero Refining Company – California maintains its headquarters

19 in Los Angeles, California, and does business in California. Plaintiff worked for CertifiedSafety

20 and Valero Refining Company – California as joint employers at one or more Valero refineries in

21 California from approximately June 2018 to August 2018.

22      21.    At all relevant times, Defendants have done business under the laws of the United

23 States, including California, as well as within this judicial district.  Defendants, and each of them,

24 have employed Plaintiff and putative Class and Collective members in California, and within this

25 judicial district.  At all relevant times, Defendants have been Plaintiff's "employer" within the

26 meaning of the FLSA and California law.

27

28

## JOINT EMPLOYER ALLEGATIONS

22.    Plaintiff is informed and believe that CertifiedSafety and the Refineries are or were the joint employers of Plaintiff and members of the putative Classes and Collective for purposes of this action under the FLSA and California wage and hour laws.

23.    Beginning with training, Refineries and CertifiedSafety jointly require members of the Classes and Collective to attend mandatory, uncompensated training in the member's home state. Refineries control, dictate, and conduct this training. In the aggregate, the named Plaintiff was required to attend mandatory, uncompensated training for each Refinery in the State of California.

24.    Following training, Refineries control the day-to-day work experiences for these workers. Plaintiff and members of the putative Classes and Collective are typically assigned for extended periods to particular refineries (up to several months), where they work closely with and under the supervision of Refineries' employees.

25.    When Plaintiff and members of the putative Classes and Collective work at a particular oil refinery, they are employed by CertifiedSafety and the company or companies that own(s) and/or operate(s) the refinery as joint employers. For example, when Plaintiff worked at the Chevron Refinery in Richmond, California, he was jointly employed by CertifiedSafety, Chevron Corporation and Chevron U.S.A. Inc.

26.    Plaintiff is informed and believes that the acts and omissions alleged herein were performed by, and/or attributable to, CertifiedSafety and the applicable Refineries each acting as agents and/or employees, and/or under the direction and control of each of the other, and that said acts and failures to act were within the course and scope of said agency, employment and/or direction and control.

27.    Plaintiff is informed and believes, and thereon alleges, that the Refineries direct, control, or supervise, directly and/or indirectly, the work of Plaintiff and members of the putative Classes and Collective.

28.    Specifically, the Refineries (1) determine the job duties to be performed by Plaintiff and members of the putative Classes and Collective; (2) determine the work schedules and shifts for Plaintiff and members of the putative Classes and Collective; (3) determine the safety procedures followed by Plaintiff and members of the putative Classes and Collective; (4) maintain a timekeeping process and track the working hours of Plaintiff and members of the putative Classes and Collective; (5) set the rate of pay for Plaintiff and members of the putative Classes and Collective working at the oil refinery locations; (6) make all decisions concerning reimbursement for travel costs and per diems to Plaintiff and members of the putative Classes and Collective; (7) set the budget of labor hours for each project; (8) conduct all pre-project training for each work assignment; and (9) make the decision to withhold compensation time spent in mandatory training.

29.    The Refineries direct and monitor every aspect of the daily work of Plaintiff and members of the putative Classes and Collective, including the job duties and scope of jobs. The Refineries control day-to-day activities, specifying how each particular task is to be performed. The Refineries dictate exact procedures and protocols for each job assignment, including but not limited to fire watching (monitoring welding with a fire extinguisher or water hose to mitigate fire hazards), traffic flagging, and hole watching (ensuring the safety of a co-worker in a confined space), and specify and provide the equipment that is to be used. The Refineries set the paperwork requirements that must be completed to document each task. The Refineries make specific work assignments for each member of the putative Classes and Collective, dictating which task(s) they will complete and where they will work at the refinery sites. The Refineries dictate where Plaintiff and members of the putative Classes and Collective must park their vehicles when they arrive at the refinery, where they must enter the refinery, and where and when they must use a shuttle to travel around the refinery.

30.    Upon information and belief, the Refineries also require Plaintiff and members of the putative Classes and Collective to comply with additional training requirements, beyond pre-assignment trainings. The Refineries require completion of specific training sessions, unilaterally

7

provide these trainings to Plaintiff and members of the putative Classes and Collective, and decide whether the trainings are paid.

31.     The Refineries unilaterally set the schedule, shifts, and hours worked by Plaintiff and members of the putative Classes and Collective. The Refineries determine when these workers can clock in, when they can take a meal break or rest break (if at all), and when they can clock out. The Refineries dictate when they can use the restroom. The Refineries set the schedules, shifts, and hours worked for Plaintiff and members of the putative Classes and Collective so that their work coincides with the schedules, shifts, and hours worked for the Refineries' in-house employees. The Refineries require Plaintiff and members of the putative Classes and Collective to perform pre-shift and post-shift work off-the-clock and without pay, and require these workers to work or remain under employer control during meal and rest breaks.

32.     The Refineries impose detailed safety protocols for Plaintiff and members of the putative Classes and Collective for each project. The Refineries unilaterally determine the safety procedures for the work performed. The Refineries have mandatory safety trainings and set the specific requirements for each task to be done in a safe manner. The Refineries dictate the amount and level, as well as types, of personal protective equipment Plaintiff and members of the putative Classes and Collective are required to use. The Refineries specify when the safety equipment can be donned and doffed.

33.     The Refineries maintain a timekeeping process and track the hours worked by Plaintiff and members of the putative Classes and Collective. The Refineries require Plaintiff and members of the putative Classes and Collective to badge in-and-out of the refinery sites, using the Refineries' badging systems. With this badging system, the Refineries monitor and track the hours worked and the precise movements of members of the putative Classes and Collective throughout the massive refinery operations.

34.     The Refineries have the power, directly and indirectly, to determine and set the rate of pay for Plaintiff and members of the putative Classes and Collective. The Refineries determine, approve, and cap the reimbursement amount paid to Plaintiff and members of the putative Classes

8

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Marcellous Ross v. CertifiedSafety, Inc., et al.*

1   and Collective for travel. The Refineries determine whether jobs are classified as "commute" jobs,

2   which controls whether Plaintiff and members of the putative Classes and Collective are

3   reimbursed for lodging and meals. The Refineries alone determine and set the rate of per diem to

4   cover lodging and meals expenses. The Refineries also determine Plaintiff's and putative Classes

5   and Collective members' compensation, if any, for time they spend taking shuttles from location

6   to location within the refinery sites.

7       35.    The Refineries maintain a high degree of control over Safety Attendant and Safety

8   Foreman staffing for each oil refinery location, determining the number of labor hours and staffing

9   levels required to perform a project. The Refineries require CertifiedSafety to perform work within

10   the labor hours budgeted by the Refineries. The Refineries specify the staffing, labor budgeting,

11   and labor hours in their contracts with CertifiedSafety.

12       36.    As employers of Plaintiff and members of the putative Classes and Collective

13   throughout the relevant time periods as outlined below, Defendants, and each of them, are solely,

14   jointly, and severally liable for back pay and other economic damages, including statutory

15   penalties, owed to Plaintiff and members of the putative Classes and Collective under common

16   law and by statute.

17       37.    Throughout this Complaint, any reference to the "Defendant" or to "Defendants" is

18   intended to refer to CertifiedSafety and the Refineries, jointly as employers.

19       38.    Defendants' annual gross sales exceed $500,000.

20   **JURISDICTION AND VENUE**

21       39.    This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §

22   1331. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28

23   U.S.C. § 1367 and Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

24       40.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391. A substantial

25   part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

26       41.    Defendants, and each of them, employed Plaintiff, Class, and Collective members in

27   the State of California. Defendants communicated with Plaintiff and other California Class and

28   

9

1  Collective members while they were in California, and induced them to enter into employment

2  relationships and travel to the Refineries' locations throughout the United States, including

3  California. Plaintiff and putative Class and Collective members in California enter into

4  employment agreements with Refineries in California.  And even when work to be performed at

5  refinery sites was outside of California, each of the Refineries herein have required Plaintiff and

6  putative Class and Collective members in California to complete training in California. Thus, each

7  of the Refineries have required Plaintiff and putative Class and Collective members in California

8  to work in California, and have controlled and dictated the terms of such work. On this basis, an

9  employment relationship exists in California between Plaintiff and putative California Class and

10  Collective members in California and each of the Defendants.

11  **EQUITABLE TOLLING**

12      42.    The limitations period applicable to Plaintiff Marcellous Ross's individual claims,

13  as well as the claims of putative Class and Collective members, against Defendants was tolled

14  from April 21, 2017 until the date Plaintiff first initiated this action by the pendency of the class

15  action claims in the related case of *Harold Jones, et al. v. CertifiedSafety*, Northern District of

16  California, Court Case Number 3:17-cv-02229-RS.

17  **FACTUAL ALLEGATIONS**

18  **Defendants and their Safety Attendant Employees**

19      43.    CertifiedSafety works with Refineries to provide skilled personnel who specialize in

20  planning, implementing, and executing safety protocols for refinery operations.  CertifiedSafety

21  provides services throughout the United States, including but not limited to California. These

22  workers are the Plaintiff, Classes, and Collective at issue in this case (hereinafter referred to as

23  "Safety Attendants").

24      44.    Plaintiff works for Defendants as Safety Attendants.[1] Plaintiff's primary duties

25

26  _____

    [1] Plaintiff is a current and former employee of Defendants. For ease of reading, allegations are

27  presented in the present tense for Plaintiff.

28
_____

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Marcellous Ross v. CertifiedSafety, Inc., et al.*

1  include, but are not limited to: monitoring and recording air pressure to ensure that oxygen levels

2  are safe for other workers at the refinery site; cleaning and organizing the refinery site; supervising

3  hot work to prevent combustion near refinery sites; operating the forklift; and disbursing proper

4  tools to other Safety Attendants.

5      45.    Plaintiff, Class, and Collective members are classified as hourly, non-exempt

6  employees and are paid an hourly rate for their services.  Plaintiff works at various work sites

7  operated by clients of CertifiedSafety throughout the United States, including but not limited to

8  California and Tennessee.

9      46.    Defendants dispatch Safety Attendants to various locations throughout the United

10  States, including in California. For each assignment, Defendants determine the hourly rate to be

11  paid and the duration of the project.

12                **Training Required of Safety Attendants**

13      47.    These sophisticated job duties require training.  CertifiedSafety requires its Safety

14  Attendants to undergo mandatory training that consists of two eight-hour days at the beginning of

15  their employment, as well as an additional eight-hour day of continuing training approximately

16  each year.  In addition to learning about the responsibilities of the Safety Attendant position, this

17  training provides information on specific CertifiedSafety policies and procedures, such as its meal

18  and rest break policies, cell phone policies, CertifiedSafety's Code of Conduct, as well as

19  CertifiedSafety's sexual harassment and discrimination policies, just to name a few.  This training

20  is described as an "orientation" to Safety Attendants' employment with CertifiedSafety, where

21  Safety Attendants fill out "new hire" paper work such as I-9s and W-4s.  This training is important

22  to CertifiedSafety's ability to market its services to the oil and drilling industry, because

23  CertifiedSafety represents that *its* Safety Attendants go through this significant training. As a

24  matter of policy, none of this training time is compensated, nor are Safety Attendants reimbursed

25  for any expenses relating to this mandatory training.

26      48.    Upon information and belief, Defendants also require Safety Attendants to undergo

27  training before each job assignment, typically no more than one day of eight hours.  These pre-

28

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Marcellous Ross v. CertifiedSafety, Inc., et al.*

assignment trainings are conducted by the Refineries, and Refineries are responsible for the content and duration of said training. Safety Attendants' ability to accept the assignment is conditioned on their completion of the training. These pre-assignment trainings cover specific topics and issues that the workers will encounter in the particular assignment, and are conducted near the home of the Plaintiff and putative Class and Collective members, prior to their dispatch to the applicable refinery site. The Refineries required each of the Plaintiff to complete pre-assignment trainings in California, typically in Benicia. On information and belief, other putative Class and Collective members in California are required to complete pre-assignment training in California prior to their dispatch by Defendants. As a matter of policy, none of this training time is compensated, nor are Safety Attendants reimbursed for any expenses relating to this mandatory training.

49.   Defendants also require Plaintiff and putative Class and Collective members to complete additional training at the refinery locations during assignments.  This time is not compensated.

**A Typical Day for Safety Attendants**

50.   Safety Attendants work long hours – typically working twelve hours a day for thirteen consecutive days, followed by one day off, and then another thirteen consecutive days of twelve-hour shifts.  Safety Attendants typically work this schedule until a given project is complete, which generally lasts between one and three months.

51.   Safety Attendants generally work one of two twelve-hour shifts in a twenty-four hour period.  For example, one group of Safety Attendants may be scheduled to work from, for example, 7:00 a.m. to 7:00 p.m., and another group of Safety Attendants is scheduled to work from 7:00 p.m. to 7:00 a.m. These schedules are not set by CertifiedSafety, but by the Refineries, which CertifiedSafety is contractually obligated to implement. But regardless of which shift Safety Attendants work, the job duties and responsibilities are the same, as is the process for reporting to work, beginning the workday, taking meal and rest breaks, and ending the workday.

52.   Safety Attendants' days begin with a daily commute from their home or their hotel

room to a parking lot.[2] Depending on the facility, the parking lot may be on site or off site.  If the parking lot is off site, Safety Attendants will park their car and put on their fire-retardant protective gear.  This protective gear uniformly includes fire-retardant coveralls or fire-retardant jacket and pants, steel-toe boots, hard hat, earplugs, safety goggles, and gloves. The donning process typically takes between five and twenty minutes. Once they have donned their protective gear, Safety Attendants must wait for a shuttle that transports them to the facility's security gate. The process of waiting for a shuttle and then and being transported to the facility takes between fifteen and thirty minutes. When the parking lot is on site, Safety Attendants must park and observe the same donning process; however, instead of taking a shuttle to the security gate, Safety Attendants must traverse a large parking lot on foot, after donning their protective gear, to the security gate.  For on-site parking facilities, the pre-security gate process takes between fifteen and thirty minutes.

53.    Once they have arrived at the facility, donned their protective gear, and traveled to the security gate, Safety Attendants go through a security check.  This requires Safety Attendants to wait in line while security inspects bags and ensures Safety Attendants are wearing all required protective equipment.  Indeed, according to Occupational Safety and Health Administration ("OSHA") requirements, Safety Attendants are not permitted to enter a facility unless they are wearing their protective gear.  *See* 29 CFR 1910.132. This process takes between five and fifteen minutes. After Safety Attendants pass through security, they swipe a badge that confirms their right to access to the facility and electronically documents the time in which they passed through security. Safety Attendants report that to comply with Defendants' scheduling and pre-shift activity requirements, they must have passed through the security gate and badged in at least thirty minutes before their scheduled start times.

54.    Once Safety Attendants go through the security check, they either walk or take a shuttle to another location at the facility which typically has a lunch tent or trailer, as well as a

---

[2] More often than not, Safety Attendants work at remote locations requiring considerable travel and temporary living arrangements.

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Marcellous Ross v. CertifiedSafety, Inc., et al.*

supervisor's trailer. This process takes between five and ten minutes.  Once at this location, Safety Attendants drop off their lunches, obtain and begin to fill out paperwork relating to their workday, gather equipment, and receive their job assignments for the day.  Often, the equipment Safety Attendants need for the day is not at that particular location, and they will have to walk to a different part of the facility to obtain the necessary equipment.  This equipment ranges from simple (e.g., hammers and brooms) to sophisticated (e.g., respirators, H2S monitors, gas monitors) and everything in between (e.g., fire extinguishers, radios, and gas masks). While at the lunch/supervisor trailers, Safety Attendants also attend mandatory daily safety meetings that last approximately five to ten minutes.  All totaled, Safety Attendants spend approximately thirty minutes engaged in these activities once they arrive at the lunch/supervisor trailers.

55.    At some point during the day (but not necessarily when Safety Attendants first report to their supervisors for the day), their supervisors document **a** start time on Technicians' time sheets – either by writing down that start time themselves, or by directing Safety Attendants to write down a specific start time, regardless of what time Safety Attendants *in fact* began working, and indeed, regardless of what time it actually is when the start time is created. Instead, Safety attendants are instructed to write down their scheduled start time, which does not account of any of the above-described pre-shift activity, but denotes the time at which Safety Attendants were scheduled to start working and expected to be at their post performing their assigned safety duties. Indeed, CertifiedSafety admits that, as a matter of the Refineries' policies, it is Defendants' expectation that Safety Attendants will only be clocked in for scheduled work time.  Notably, the time sheets for Safety Attendants typically show Safety Attendants all beginning their day at the exact same time, and almost always on a round number, e.g., 6:30 a.m. or 7:00 a.m.

56.    At this point, Safety Attendants leave the lunch/supervisor trailer location and walk to their job post for the day.  When at a post, Safety Attendants perform essential safety functions requiring constant attention.  For example, when on fire watch and monitoring a welding team, Safety Attendants ensure no smoldering fires result from cutting or welding metal. Safety Attendants on hole watch ensure the safety of the person working in a confined space, while

14

monitoring and recording air pressure to ensure oxygen levels are safe. The role of the Safety Attendant, and the constant attention demanded by the position, is an essential part of industrial maintenance safety programs.

57.    As a result of these demanding responsibilities, Safety Attendants rarely, if ever, are permitted to take meal and rest breaks.  This is for several reasons.  First, Safety Attendants are *always* required to carry their radios, and are *always* on call.  It is Defendants' expectation that Safety Attendants always answer calls from their supervisors at any time. Thus, no meal or rest break is ever duty-free.

58.    Second, and with respect to meal breaks, food may not be eaten except in designated locations – typically the lunch tent.  However, walking from a job post to the lunch tenth takes *at least* ten to fifteen minutes.  This travel time is included within their thirty-minute meal breaks. Because this travel time is included in the thirty-minute meal period, any lunch Safety Attendants take consists of nothing more than a couple minutes to quickly eat some food, sandwiched in between walking to and from the lunch tent for the vast majority of their thirty minute break.

59.    Third, OSHA requirements, as well as Defendants' requirements, insist that much of the work performed at these facilities be monitored by Safety Attendants.  Thus, Safety Attendants cannot abandon the crews under their supervision unless another Safety Attendant relieves them (which rarely occurs), regardless of whether it is time to take a meal or rest break.  This often results in meal and rest breaks never being taken, and to the extent such breaks are even attempted, they are not timely. Fourth, and relatedly, Safety Attendants are constantly called on their radios whenever they attempt to take a break, because the crew under their supervision needs to resume working.

60.    Despite the fact that Safety Attendants rarely (if ever) take meal or rest breaks, Defendants automatically deduct thirty minutes from Safety Attendants' pay as an uncompensated meal period.  Defendants have no policies, procedures, or practices to ensure meal and rest breaks are being taken.  Indeed, with the exception of California, CertifiedSafety admitted that Defendants did nothing to track or even mark on timesheets whether meal periods were taken until

the Fall of 2017 – a change that was admittedly triggered by the *Harold Jones, et al. v. CertifiedSafety*, Case No. 3:17-cv-02229-RS, lawsuit.  Instead, at the end of work shifts, Defendants' supervisors, foreman, and managers instruct Safety Attendants to write that they took a meal break at a specific time – typically at the four and a half hour mark in their shift.  Notably, CertifiedSafety's records show that Safety Attendants apparently took meal breaks at the exact same time – often right at the four and a half hour mark in their shift – and that time just so happens to be a round number, e.g., 11:00 p.m. or 11:30 p.m.

61.    When shifts are scheduled to end, Safety Attendants may not leave their post until another Safety Attendant relieves them.  This typically does not occur until after their scheduled end times, and Safety Attendants frequently work fifteen minutes to an hour past their scheduled end times waiting for relief.  Nevertheless, Safety Attendants are expected to clock out when their shift is scheduled to end, regardless of when they stopped working.

62.    At the end of a shift, and once they are relieved by another Safety Attendant and debrief with that individual, Safety Attendants walk back to the lunch/supervisor trailer area.  This walk takes anywhere from ten to thirty minutes. Once at the lunch/supervisor trailers, they return their equipment, complete and submit their paperwork for the day, and sign out with their supervisor or foreman.  Safety Attendants do not write down the actual end time, but instead are instructed by Defendant's supervisors and foremen to write down a specific time, or, said supervisors and foremen write down this time themselves – a time that usually is the same as their scheduled end times, even though the actual end time is much later.  Notably, Defendants' managers, foremen and supervisors even use white out or erasable pens to alter time records when Safety Attendants do not report times as instructed.  This applies to start and end times, as well as uncompensated meal periods.

63.    Once Safety Attendants sign out for the day, they observe the same process as their pre-shift activity.  This includes walking or shuttling from the lunch/supervisor trailers to the security gate, going through a security check, walking or shuttling to their car, and doffing their equipment.

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Marcellous Ross v. CertifiedSafety, Inc., et al.*

64.    All totaled, Safety Attendants work between one hour and fifteen minutes to two and a half hours off-the-clock every day – *not including thirty minutes daily for uncompensated meal periods that were never provided.*  Safety Attendants must be parked and begin donning their protective gear between one hour and one hour and fifteen minutes before their scheduled start time to comply with Defendant's scheduling and pre-shift activity requirements.  Likewise, Safety Attendants report that they typically do not finish doffing their protective gear until between forty-five minutes and one hour and fifteen minutes after their scheduled end time.

**Safety Attendants Incur Significant Expenses and Travel Long Distances to Work for Defendants, Without Compensation or Adequate Reimbursement**

65.    Defendants' job sites are in remote locations requiring significant travel. For each job, Safety Attendants are assigned to a project at a facility for one to three months.  After each job, Safety Attendants are laid off. These jobs may be in the same town as the Safety Attendant, or in a different town.  When jobs are in-town – generally, within a range of 65-75 miles – Defendants do not provide any reimbursement for travel as a matter of policy, even though commuting to these remote locations often takes an hour or more each way.

66.    For out-of-town projects, Defendants provide a one-time travel reimbursement and daily per diem. However, Defendants do not inquire about the travel expenses in fact incurred, but instead tell Safety Attendants how much it will reimburse *before* the project even begins. This one-time travel reimbursement is set by Refineries.   Refineries set the one-time travel reimbursement by simply using the website "MapQuest" to determine the number of miles between the Safety's Attendant's residence and the jobsite, and providing the standard IRS mileage rate – nothing more.  However, some Refineries artificially cap the amount of mileage they will reimburse, and refuse to provide the correct IRS rate.  No Defendant does anything to make up the difference as a matter of policy.  Moreover, when a Safety Attendant does not complete the full project – either by being fired or because the Safety Attendant voluntarily needed to leave – Defendants withhold travel reimbursement *in its entirety*.  Regardless, it is the

17

1    overwhelming experience of Safety Attendants that the travel reimbursement provided is not

2    sufficient to cover their travel expenses.

3         67.    As an example, for a California resident assigned a two-month project in Washington,

4    Defendants would provide a one-time travel reimbursement ranging from $200 - $470 – depending

5    on what the Refinery wants to reimburse.  Of course, such a paltry sum is not adequate to cover

6    airfare on one week's notice (which is typically the amount of notice provided), even though it is

7    reasonable for Safety Attendants to incur airline travel costs when traveling such a long distance.

8    Indeed, even when Safety Attendants drive to out-of-state jobs, the reimbursement provided often

9    is not even sufficient to cover the IRS mileage rate, let alone expenses for food or lodging on the

10   road, or rental cars for Safety Attendants who do not have a vehicle capable of making a 1,000-

11   plus mile journey and back.

12        68.    Additionally, Safety Attendants are not compensated at an hourly rate or otherwise

13   for the actual time it takes to travel these long distances.  In fact, documents provided by

14   CertifiedSafety reveal Defendants' efforts to have Safety Attendants unlawfully waive their right

15   to claim travel time compensation when dispatching Safety Attendants, confirming that their

16   failure to compensate this time is knowing and willful.

17        69.    Likewise, the daily per diem does not come close to reimbursing Safety Attendants

18   for daily living expenses.  As a preliminary matter, Refineries set the daily per diem – typically

19   between $65 - $75 a day. On information and belief, Defendants do not conduct any investigations

20   or audits to determine whether this amount is sufficient to cover necessarily-incurred expenses. In

21   any event, it is plain that $70 a day is insufficient to cover all necessary living and lodging

22   expenses.  Hotel costs *alone* far exceed this amount.  Indeed, while even the ordinary hotel costs

23   would not be covered by this per diem, hotels within driving distance of job sites often raise prices

24   during projects, knowing demand is high with an influx of remote workers.  Nightly hotel costs

25   are often nearly double Safety Attendants' daily per diem.  Thus, the per diem not only fails to

26   cover hotel costs, but it does not begin to cover other necessary daily living expenses, such as

27   food, toiletries, laundry costs, and the like.

28

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Marcellous Ross v. CertifiedSafety, Inc., et al.*

70.    Additionally, Safety Attendants incur numerous expenses to perform their daily duties that are not reimbursed.  For example, Safety Attendants must purchase fire-retardant protective gear, backpacks, radio holsters, gloves, earplugs, clipboards, pens, steel-toe boots, and a watch.

71.    In sum, Safety Attendants:

a.    Are frequently denied compensation for all hours worked, including minimum wage and overtime for work in excess of eight hours per day and forty hours per week, as well as double time for work over twelve hours in one day and over eight hours on the seventh consecutive day of work;

b.    Are not provided with premium pay for missed meal and rest breaks.   When Plaintiff and putative Class members work more than ten hours per day, a second meal period is regularly not made available to them.  Putative Class members, including Plaintiff, are not provided with premium pay for these missed meal breaks; and

c.    Are denied reimbursement for work-related travel costs to putative Class and Collective members, including Plaintiff.  Defendants also do not reimburse Plaintiff, Class, and Collective members for necessarily incurred business expenses.

72.    Defendants are aware that Safety Attendants did not receive timely and compliant meal and rest periods to which they were entitled, and that they were denied compensation for all time worked.

73.    Defendants also do not provide putative Class members, including Plaintiff, accurate itemized wage statements as required by California law.  The wage statements that they are provided are not accurate because they do not reflect the actual hours worked by Plaintiff and putative Class members.  Further, the wage statements are inaccurate because they do not include minimum wage for all hours worked, premium pay for missed breaks, overtime, and double time for all hours worked.

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Marcellous Ross v. CertifiedSafety, Inc., et al.*

74.    Defendants often do not provide putative Class members with full payment of all wages owed at the end of employment.  As these workers are owed for off-the-clock work, unpaid overtime, and premium pay when their employment ends, and these amounts remained unpaid under Defendants' policies and practices, Defendants fail to pay all wages due upon termination. As a consequence, Defendants are subject to waiting time penalties.[3]

75.    Defendants require Plaintiff and Class members to work at least seven consecutive days, without a day of rest.

76.    Plaintiff worked at several drilling sites in California and throughout the United States, including but not limited to in Tennessee, and his experience with regards to hours worked, off-the-clock work, meal and rest breaks, and unreimbursed business expenses is similar in each instance.   Plaintiff is informed, believes, and thereon alleges that Defendants' policies and practices have at all relevant times been similar for Safety Attendants, regardless of the location within the United States, including in California. Defendants' unlawful conduct has been widespread, repeated, and consistent throughout its work locations in the United States, including in California. Defendants knew or should have known that their policies and practices have been unlawful and unfair.

77.    Defendants' conduct was willful, carried out in bad faith, and caused significant damages to non-exempt hourly employees in an amount to be determined at trial.

**COLLECTIVE ALLEGATIONS UNDER THE FLSA**

78.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

---

[3] Defendants often promise bonuses for work on holidays as well as overtime and double time for these projects.  However, these promises often go unfulfilled, and the employees do not receive all pay owed to them.  Moreover, Defendants regularly do not consider these bonuses when calculating the hourly rate, overtime rate, and double time rate for Plaintiff and putative Class and Collective members.  The system Defendants have in place to pay Plaintiff and other Safety Attendants bonuses does not address this wage deficiency and only further exacerbates the inadequate wages they earn and are owed under the law because such bonuses are not included in the calculation of their regular rate and fail to account for overtime and premium pay owing to such employees.

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Marcellous Ross v. CertifiedSafety, Inc., et al.*

79.    Plaintiff brings his FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b) as to claims for failing to pay Plaintiff and Collective members for all hours worked, including minimum wage, wages at the agreed rate, and overtime compensation for all hours worked over 40 hours per week, liquidated damages, and attorneys' fees and costs under the FLSA.  The FLSA Collective that Plaintiff seeks to represent is defined as follows:

> All current and former hourly, non-exempt Safety Attendants and Safety Foremen who worked for CertifiedSafety in the United States during the time period three years prior to the filing of this Complaint until the resolution of this action, who did not opt-in to the FLSA collective in *Harold Jones, et al. v. CertifiedSafety*, Northern District of California, Court Case Number 3:17-cv-02229-RS.

80.    Plaintiff's claims for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to Section 216(b) of the FLSA because Plaintiff's FLSA claims are similar to the claims of the Collective members.

81.    The Collective members are similarly situated, as they have substantially similar job duties and requirements and were subject to a common policy, practice, or plan that required them to perform work without compensation and required them to perform work at an unlawfully reduced payment rate, in violation of the FLSA.

82.    Plaintiff is representative of the Collective members and is acting on behalf of their interests, as well as Plaintiff's own interests, in bringing this action.

83.    Plaintiff will fairly and adequately represent and protect the interests of Collective members.  Plaintiff has retained counsel competent and experienced in employment class action and collective action litigation.

84.    The similarly situated Collective members are known to Defendants, are readily identifiable, and may be located through Defendants' records.  These similarly situated employees may readily be notified of this action, and allowed to "opt-in" to this case pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for unpaid wages, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Marcellous Ross v. CertifiedSafety, Inc., et al.*

## CLASS ALLEGATIONS

85.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

86.    Plaintiff brings this case as a class action on behalf of themselves and all others similarly situated pursuant to Federal Rule of Civil Procedure 23.

87.    The putative California Class that Plaintiff seeks to represent regarding pre-assignment training in California is defined as follows:

> All current and former Safety Attendants and Safety Foremen who completed training in California prior to any assignment by CertifiedSafety to work for any Refinery during the time period four years prior to the filing of this Complaint until the resolution of this action (the "California Training Class").

88.    The putative California Class that Plaintiff seeks to represent regarding claims against CertifiedSafety for work at oil refineries in California is defined as:

> All current and former Safety Attendants and Safety Foremen who worked for CertifiedSafety at any oil refinery in California during the time period four years prior to the filing of this Complaint until the resolution of this action (the "California CertifiedSafety Class").

89.    The putative California Class that Plaintiff seeks to represent regarding claims against Chevron Corporation and/or Chevron U.S.A. Inc. for work at oil refineries in California is defined as:

> All current and former Safety Attendants and Safety Foremen who worked for CertifiedSafety and Chevron Corporation and/or Chevron U.S.A. Inc. as joint employers at any oil refinery in California during the time period four years prior to the filing of this Complaint until the resolution of this action (the "California Chevron Class").

90.    The putative California Class that Plaintiff seeks to represent regarding claims against Valero Energy Corporation and/or Valero Refining Company – California for work at oil refineries in California is defined as:

All current and former Safety Attendants and Safety Foremen who worked for CertifiedSafety and Valero Energy Corporation and/or Valero Refining Company – California as joint employers at any oil refinery in California during the time period four years prior to the filing of this Complaint until the resolution of this action (the "California Valero Class").

91.    This action has been brought and may properly be maintained as a class action under Rule 23:

a. **Numerosity**: The potential members of the putative Classes as defined are so numerous that joinder of all the members of the putative Classes is impracticable.

b. **Commonality**: There are questions of law and fact common to Plaintiff and the putative Classes that predominate over any questions affecting only individual members of the putative Classes.  These common questions of law and fact include, but are not limited to:

i.   Whether Defendants fail to compensate members of the putative Classes for all hours worked, including at minimum wage and as overtime compensation, in violation of the California Labor Code and Wage Orders;

ii.  Whether Defendants fail to compensate members of the putative California Classes for all hours worked, including at minimum wage and as overtime compensation, in violation of Business and Professions Code §§ 17200 *et seq.*;

iii. Whether Defendants have a policy and/or practice of requiring members of the putative California Classes to be in the control of and/or spend time primarily for the benefit of Defendants, and perform off-the-clock without compensation;

iv.  Whether Defendants fail to properly pay overtime compensation, at either one and one-half times or double the regular rate of pay, to members of the putative California Classes in violation of the California Labor Code and Wage Orders;

23

v.    Whether Defendants fail to properly pay overtime compensation, at either one and one-half times or double the regular rate of pay, to putative California Class members in violation of Business and Professions Code §§ 17200 *et seq*.;

vi.    Whether Defendants fail to authorize and permit, make available, and/or provide members of the putative California Classes with timely meal and rest periods to which they were entitled in violation of the California Labor Code and Wage Orders;

vii.    Whether Defendants fail to authorize and permit, make available, and/or provide putative California Class members with timely meal and rest periods to which they were entitled in violation of Business and Professions Code §§ 17200 *et seq*.;

viii.    Whether Defendants fail to reimburse members of the putative California Classes for reasonable and necessary business expenses in violation of the California Labor Code and Wage Orders;

ix.    Whether Defendants fail to reimburse California Class members for reasonable and necessary business expenses in violation of Business and Professions Code §§ 17200 *et seq*.;

x.    Whether Defendants fail to provide members of the putative California Classes with timely, accurate itemized wage statements in violation of the California Labor Code and Wage Orders;

xi.    Whether Defendants fail to provide putative California Class members with timely, accurate itemized wage statements in violation of Business and Professions Code §§ 17200 *et seq*.;

xii.    Whether Defendants fail to timely pay putative California Class members for all wages owed upon termination of employment in violation of the California Labor Code;

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Marcellous Ross v. CertifiedSafety, Inc., et al.*

xiii.   Whether Defendants fail to timely pay putative California Class members for all wages owed upon termination of employment in violation of Business and Professions Code §§ 17200 *et seq.*; and

xiv.   The proper formula for calculating restitution, damages and penalties owed to Plaintiff and the Classes as alleged herein.

c.   **Typicality**: Plaintiff's claims are typical of the claims of the Classes. Defendants' common course of conduct in violation of law as alleged herein has caused Plaintiff and members of the putative Classes to sustain the same or similar injuries and damages. Plaintiff's claims are therefore representative of and co-extensive with the claims of the Classes.

d.   **Adequacy of Representation**: Plaintiff is a member of the Classes, does not have any conflicts of interest with other putative Class members, and will prosecute the case vigorously on behalf of the Classes. Counsel representing Plaintiff is competent and experienced in litigating large employment class actions, including wage and hour classes. Plaintiff will fairly and adequately represent and protect the interests of members of the putative Classes.

e.   **Superiority of Class Action**: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all members of the putative Classes is not practicable, and questions of law and fact common to the Classes predominates over any questions affecting only individual members of the Classes. Each members of the putative Classes have been damaged and is entitled to recovery by reason of Defendants' illegal policies and/or practices. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. In the alternative, the Classes may be certified because the prosecution of separate actions by the individual members of the Classes would create a risk of inconsistent or varying

25

adjudication with respect to individual members of the Classes, and, in turn, would establish incompatible standards of conduct for Defendants.

**FIRST CAUSE OF ACTION**
**Violation of the Fair Labor Standards Act**
**29 U.S.C. §§ 201,** *et seq.*
*(By Plaintiff against Defendants)*

92.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

93.    The FLSA requires that covered employees receive compensation for all hours worked and overtime compensation not less than one and one-half times the regular rate of pay for all hours worked in excess of forty hours in a work week.  29 U.S.C. § 207(a)(1).

94.    At all times material herein, Plaintiff and the Collective are covered employees entitled to the rights, protections, and benefits provided under the FLSA. 29 U.S.C. §§ 203(e) and 207(a).

95.    Defendants are covered employers required to comply with the FLSA's mandates.

96.    Defendants have violated the FLSA with respect to Plaintiff and the Collective, by, *inter alia,* failing to compensate Plaintiff and the Collective for all hours worked and, with respect to such hours, failing to pay the legally mandated overtime premium for such work and/or minimum wage.  Defendants have also violated the FLSA by failing to keep required, accurate records of all hours worked by Plaintiff and the Collective.  29 U.S.C. § 211(c).

97.    Plaintiff and the Collective are victims of uniform and company-wide compensation policies. These uniform policies, in violation of the FLSA, have been applied to current and former non-exempt, hourly Safety Attendants and Safety Foremen of Defendants, working throughout the United States.

98.    Plaintiff and the Collective are entitled to damages equal to the mandated pay, including minimum wage, straight time, and overtime premium pay within the three years preceding the filing of the complaint, plus periods of equitable tolling, because Defendants have acted willfully and knew or showed reckless disregard for whether the alleged conduct was

26

prohibited by the FLSA.

99.    Defendants have acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiff and the Collective are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay and/or prejudgment interest at the applicable rate.  29 U.S.C. § 216(b).

100.  As a result of the aforesaid violations of the FLSA's provisions, pay, including minimum wage, straight time, and overtime compensation, has been unlawfully withheld by Defendants from Plaintiff and the Collective.  Accordingly, Defendants are liable for unpaid wages, together with an amount equal as liquidated damages, attorneys' fees, and costs of this action.

101.  Wherefore, Plaintiff and the Collective request relief as hereinafter provided.

### SECOND CAUSE OF ACTION
**Failure to Pay for All Hours Worked Pursuant to Labor Code § 204 - For Training in California**

102.  Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

103.  This claim is brought by Plaintiff on behalf of the California Training Class against CertifiedSafety, Chevron Corporation, Chevron U.S.A. Inc., Valero Energy Corporation, and Valero Refining Company-California.

104.  This claim is brought by Plaintiff on behalf of the California Training Class against Defendants.

105.  Defendants willfully engaged in and continue to engage in a policy and practice of not compensating Plaintiff and putative Class members for all hours worked or spent under its control.

106.  Defendants require Plaintiff and the putative California Training Class members to attend pre-assignment training sessions in California. These trainings are completely locally in California prior to the dispatch of Plaintiff and the putative California Training Class members

27

to refinery locations throughout the United States for assignments. Defendants require Plaintiff and the putative California Training Class members to complete these trainings in order to accept the applicable job assignments, and the training are required for each job assignment.

107.  These pre-assignment training sessions can last up to eight hours, but Plaintiff and the putative California Training Class members are not paid for any of their time spent in them. Additionally, Plaintiff and the putative California Training Class members are not compensated for their expenses incurred traveling to and from the pre-assignment training sessions.  As a result, Defendants fail to pay Plaintiff and the putative California Training Class members for all hours worked and fail to track their actual hours worked.

108.  Labor Code § 1194(a) provides as follows:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

109.  Labor Code § 200(a) defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation."

110.  Labor Code § 1198 makes it unlawful for employers to employ employees under conditions that violate the Wage Orders.

111.  IWC Wage Order 16-2001(2)(J) defines hours worked as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

112.  Defendants require Plaintiff and the putative California Training Class members to work off-the-clock without compensation.  In other words, Plaintiff and the putative California Training Class members are forced to perform work for the benefit of Defendants without compensation.

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Marcellous Ross v. CertifiedSafety, Inc., et al.*

113.  In violation of California law, Defendants knowingly and willfully refuse to perform their obligations to provide Plaintiff and the putative California Training Class members with compensation for all time worked.  Defendants regularly fail to track the time they actually worked or to compensate them for hours worked.  Therefore, Defendants committed, and continue to commit, the acts alleged herein knowingly and willfully, and in conscious disregard of the Plaintiff's and the putative California Training Class members' rights.  Plaintiff and the putative California Training Class are thus entitled to recover nominal, actual, and compensatory damages, plus interest, attorneys' fees, expenses, and costs of suit.

114.  As a proximate result of the aforementioned violations, Plaintiff and the putative Class have been damaged in an amount according to proof at time of trial.

115.  Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

### THIRD CAUSE OF ACTION
**Failure to Pay Minimum Wages Pursuant to California Labor Code §§ 1182.11, 1182.12, 1194, 1197, and 1197.1 - For Training in California**

116.  Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

117.  This claim is brought by Plaintiff on behalf of the California Training Class against CertifiedSafety, Chevron Corporation, Chevron U.S.A. Inc., Valero Energy Corporation, and Valero Refining Company-California.

118.  During the applicable statutory period, California Labor Code §§1182.11, 1182.12 and 1197, and the Minimum Wage Order were in full force and effect and require that Defendants' hourly employees receive the minimum wage for all hours worked irrespective of whether nominally paid on a piece rate, or any other bases, at the rate of ten dollars and fifty cents ($10.50) per hour commencing January 1, 2017.

119.  "Hours worked" is the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so.

120.  California Labor Code §1194 states:

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Marcellous Ross v. CertifiedSafety, Inc., et al.*

1

2      Notwithstanding any agreement to work for a lesser wage, any employee
       receiving less than the legal minimum wage or the legal overtime
3      compensation applicable to the employee is entitled to recover in a civil
       action the unpaid balance of the full amount of this minimum wage or
4      overtime compensation, including interest thereon, reasonable attorney's
       fees, and costs of suit.

5          121.  Labor Code §1194.2 provides that, in any action under Section 1194 to recover

6    wages because of the payment of a wage less than minimum wage fixed by an order of the

7    commission, an employee shall be entitled to recover liquidated damages in an amount equal to

8    the wages unlawfully unpaid and interest thereon.

9          122.  Defendants have maintained policies and procedures which have created a working

10   environment where hourly employees are routinely compensated at a rate that is less than the

11   statutory minimum wage.  Plaintiff and the putative California Training Class members are

12   required to attend pre-assignment training but are not provided as compensation for any of the

13   time that they spend in this training.

14         123.  As a direct and proximate result of the unlawful acts and/or omissions of

15   Defendants, Plaintiff and putative California Training Class members have been deprived of

16   minimum wages in an amount to be determined at trial, and are entitled to a recovery of such

17   amount, plus liquidated damages, plus interest thereon, attorneys' fees, and costs of suit pursuant

18   to Labor Code §§ 1194, 1194.2 and 1197.1.

19         124.  Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

20                              **FOURTH CAUSE OF ACTION**

21   **Failure to Reimburse for Necessary Business Expenditures Pursuant to Labor Code § 2802 -
     For Training in California**

22         125.  Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set

23   forth herein.

24         126.  This claim is brought by Plaintiff on behalf of the California Training Class against

25   CertifiedSafety, Chevron Corporation, Chevron U.S.A. Inc., Valero Energy Corporation, and

26   Valero Refining Company-California.

27

28

                                          30

127.  Defendants do not reimburse Plaintiff and putative Class members for necessary business expenditures.

128.  Labor Code § 2802 provides, in relevant part:

> An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful. … For the purposes of this section, the term "necessary expenditures or losses" shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section.

129.  Defendants regularly require Plaintiff and putative California Training Class members to pay out-of-pocket expenses for transportation and food when traveling to pre-assignment training sessions in California.  Defendants do not reimburse Plaintiff for travel expenses.

130.  Defendants are liable to Plaintiff and the putative California Training Class members for the unreimbursed expenses and civil penalties, with interest thereon.  Furthermore, Plaintiff is entitled to an award of attorneys' fees and costs as set forth below.

131.  Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

## FIFTH CAUSE OF ACTION
**Failure to Provide Accurate Itemized Wage Statements Pursuant to Labor Code § 226 - For Training in California**

132.  Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

133.  This claim is brought by Plaintiff on behalf of the California Training Class against CertifiedSafety, Chevron Corporation, Chevron U.S.A. Inc., Valero Energy Corporation, and Valero Refining Company-California.

134.  Defendants do not provide Plaintiff and putative California Training Class members with accurate itemized wage statements as required by California law.

135.  Labor Code § 226(a) provides:

Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least four years at the place of employment or at a central location within the State of California.

136. The IWC Wage Orders also establishes this requirement. (*See* IWC Wage Order 16-2001(6).)

137. Labor Code § 226(e) provides:

An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

Plaintiff seeks to recover actual damages, costs and attorneys' fees under this section.

138. Defendants do not provide timely, accurate itemized wage statements to Plaintiff and putative California Training Class members in accordance with Labor Code § 226(a) and the IWC Wage Orders. As a result of the unpaid time for pre-assignment training, the wage statements Defendants provide their employees, including Plaintiff and putative California Training Class members, do not accurately reflect the actual hours worked, actual gross wages earned, or actual net wages earned.

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Marcellous Ross v. CertifiedSafety, Inc., et al.*

139.  Defendants are liable to Plaintiff and the putative California Training Class alleged herein for the amounts described above in addition to the civil penalties set forth below, with interest thereon.  Furthermore, Plaintiff is entitled to an award of attorneys' fees and costs as set forth below, pursuant to Labor Code § 226(e).

140.  Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

## SIXTH CAUSE OF ACTION
### Waiting Time Penalties Pursuant to Labor Code §§ 201-203 - For Training in California

141.  Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

142.  This claim is brought by Plaintiff on behalf of the California Training Class against CertifiedSafety, Chevron Corporation, Chevron U.S.A. Inc., Valero Energy Corporation, and Valero Refining Company-California.

143.  Defendants do not provide Plaintiff and putative California Training Class members with their wages when due under California law after their employment with Defendants ends.

144.  Labor Code § 201 provides:

> If an employer discharges an employee, the wages earned and
> unpaid at the time of discharge are due and payable immediately.

145.  Labor Code § 202 provides:

> If an employee not having a written contract for a definite period quits
> his or her employment, his or her wages shall become due and payable not
> later than 72 hours thereafter, unless the employee has given 72 hours
> previous notice of his or her intention to quit, in which case the employee
> is entitled to his or her wages at the time of quitting.

146.  Labor Code § 203 provides, in relevant part:

> If an employer willfully fails to pay, without abatement or reduction, in
> accordance with Sections 201, 201.5, 202, and 205.5, any wages of an
> employee who is discharged or who quits, the wages of the employee
> shall continue as a penalty from the due date thereof at the same rate
> until paid or until an action therefor is commenced; but the wages shall not
> continue for more than 30 days.

147. Plaintiff and putative California Training Class members left their employment with Defendants during the statutory period, at which time Defendants owed them unpaid wages. These earned, but unpaid, wages derive from time spent working for the benefit of Defendants, which went unrecorded and/or uncompensated.

148. Defendants willfully refuse to pay putative Class members all the wages that are due and owing to them, in the form of uncompensated off-the-clock time, minimum wage, and reimbursement for necessary business expenditures, upon the end of their employment as a result of Defendants' willful failure to provide Plaintiff and the putative California Training Class members with payment for all hours worked and reimbursement for travel for the required pre-assignment training in California. As a result of Defendants' actions, Plaintiff and putative Class members have suffered and continue to suffer substantial losses, including lost earnings, and interest.

149. Defendants' willful failure to pay Plaintiff and putative California Training Class members the wages due and owing them constitutes a violation of Labor Code §§ 201-202. As a result, Defendants are liable to Plaintiff and putative California Training Class members for all penalties owing pursuant to Labor Code §§ 201-203.

150. In addition, Labor Code § 203 provides that an employee's wages will continue as a penalty up to thirty days from the time the wages were due. Therefore, the Plaintiff and putative California Training Class members are entitled to penalties pursuant to Labor Code § 203, plus interest.

151. Wherefore, Plaintiff and the Class request relief as hereinafter provided.

## SEVENTH CAUSE OF ACTION
### Failure to Pay for All Hours Worked Pursuant to Labor Code § 204 - For Work at Refineries in California

152. Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

153. This claim is brought by Plaintiff on behalf of the California CertifiedSafety Class, the California Chevron Class, and the California Valero Class against CertifiedSafety, Chevron

34

1    Corporation, Chevron U.S.A. Inc., Valero Energy Corporation, and Valero Refining Company-

2    California.

3        154.  Defendants willfully engaged in and continue to engage in a policy and practice of

4    not compensating Plaintiff and putative Class members for all hours worked or spent in its

5    control while working at refineries in California.

6        155.  Defendants regularly schedule Plaintiff and the putative Class members to work

7    twelve-hour shifts.  However, Defendants intentionally and willfully require Plaintiff and the

8    putative Class members to complete additional work off-the-clock, in excess of twelve hours per

9    day.  For example, Defendants instruct Safety Attendants to clock in only after they have donned

10   personal protection equipment and to clock out before taking off their personal protection

11   equipment.  Defendants do not compensate Plaintiff and Class members for this time.  Moreover,

12   Defendants deduct thirty minutes of work for a meal period.  However, Plaintiff and putative

13   Class members routinely work through this meal period and are not compensated for that work.

14   Additionally, Defendants require Plaintiff and the putative Class members to attend training

15   sessions, not including pre-assignment training, which often involve lengthy travel to the training

16   site, without compensation for the time spent in trainings or traveling to the trainings. As a

17   result, Defendants fail to pay Plaintiff and the putative Class members for all hours worked and

18   fail to track their actual hours worked.

19       156.  Labor Code § 1194(a) provides as follows:

20           Notwithstanding any agreement to work for a lesser wage, any
             employee receiving less than the legal minimum wage or the legal
21           overtime compensation applicable to the employee is entitled to recover
             in a civil action the unpaid balance of the full amount of this minimum
22           wage or overtime compensation, including interest thereon, reasonable
             attorneys' fees, and costs of suit.
23

24       157.  Labor Code § 200(a) defines wages as "all amounts for labor performed by

25   employees of every description, whether the amount is fixed or ascertained by the standard of

26   time, task, piece, commission basis, or other method of calculation."

27

28

158.  Labor Code § 1198 makes it unlawful for employers to employ employees under conditions that violate the Wage Orders.

159.  IWC Wage Order 16-2001(2)(J) defines hours worked as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

160.  Defendants require Plaintiff and the Classes to work off-the-clock without compensation.  In other words, Plaintiff and the Class are forced to perform work for the benefit of Defendants without compensation.

161.  In violation of California law, Defendants knowingly and willfully refuse to perform their obligations to provide Plaintiff and the putative Classes with compensation for all time worked.  Defendants regularly fail to track the time they actually worked or to compensate them for hours worked.  Therefore, Defendants committed, and continue to commit, the acts alleged herein knowingly and willfully, and in conscious disregard of the Plaintiff's and the putative Class members' rights.  Plaintiff and the putative Classes are thus entitled to recover nominal, actual, and compensatory damages, plus interest, attorneys' fees, expenses, and costs of suit.

162.  As a proximate result of the aforementioned violations, Plaintiff and the putative Classes have been damaged in an amount according to proof at time of trial.

163.  Wherefore, Plaintiff and the putative Classes request relief as hereinafter provided.

## EIGHTH CAUSE OF ACTION
**Failure to Pay Minimum Wages Pursuant to California Labor Code §§ 1182.11, 1182.12, 1194, 1197, and 1197.1 - For Work at Refineries in California**

164.  Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

165.  This claim is brought by Plaintiff on behalf of the California CertifiedSafety Class, the California Chevron Class, and the California Valero Class against CertifiedSafety, Chevron Corporation, Chevron U.S.A. Inc., Valero Energy Corporation, and Valero Refining Company-California.

36

166.  During the applicable statutory period, California Labor Code §§1182.11, 1182.12 and 1197, and the Minimum Wage Order were in full force and effect and require that Defendants' hourly employees receive the minimum wage for all hours worked irrespective of whether nominally paid on a piece rate, or any other bases, at the rate of ten dollars and fifty cents ($10.50) per hour commencing January 1, 2017.

167.  "Hours worked" is the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so.

168.  California Labor Code §1194 states:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

169.  Labor Code §1194.2 provides that, in any action under Section 1194 to recover wages because of the payment of a wage less than minimum wage fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

170.  Defendants have maintained policies and procedures which have created a working environment where hourly employees are routinely compensated at a rate that is less than the statutory minimum wage while working at refineries in California.  Plaintiff and members of the putative Classes frequently work time off-the-clock during rest and meal breaks and go uncompensated for that time.  In addition, Safety Attendants are regularly uncompensated for time spent donning and doffing safety equipment.

171.  As a direct and proximate result of the unlawful acts and/or omissions of Defendants, Plaintiff and putative Class members have been deprived of minimum wages in an amount to be determined at trial, and are entitled to a recovery of such amount, plus liquidated

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Marcellous Ross v. CertifiedSafety, Inc., et al.*

damages, plus interest thereon, attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194, 1194.2 and 1197.1.

172.  Wherefore, Plaintiff and the putative Classes request relief as hereinafter provided.

**NINTH CAUSE OF ACTION**
**Failure to Pay Overtime Wages Pursuant to Labor Code § 510 - For Work at Refineries in California**

173.  Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

174.  This claim is brought by Plaintiff on behalf of the California CertifiedSafety Class, the California Chevron Class, and the California Valero Class against CertifiedSafety, Chevron Corporation, Chevron U.S.A. Inc., Valero Energy Corporation, and Valero Refining Company-California.

175.  Defendants do not compensate Plaintiff and putative Class members with the appropriate overtime rate, including time and a half and double time, as required by California law, for their work at refineries in California.  For example, Defendants do not consider bonuses when determining what the overtime and double time rates should be for Plaintiff and putative Class members.

176.  Labor Code § 510 provides as follows:

> Eight hours of labor constitutes a day's work.  Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee.  Nothing in this section requires an employer to combine more than one rate of overtime compensation in order to calculate the amount to be paid to an employee for any hour of overtime work.

177.  The IWC Wage Order 16-2001(3)(A)(1) states:

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Marcellous Ross v. CertifiedSafety, Inc., et al.*

The following overtime provisions are applicable to employees 18 years of age or over and to employees 16 or 17 years of age who are not required by law to attend school and are not otherwise prohibited by law from engaging in the subject work. Such employees shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1 ½) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than: . . . One and one-half (1 ½) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek; and … [d]ouble the employee's regular rate of pay for all hours worked in excess of 12 hours in any workday and for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

178. Labor Code § 1194(a) provides as follows:

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

179. Labor Code § 200 defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis or other method of calculation." All such wages are subject to California's overtime requirements, including those set forth above.

180. Defendants regularly require Plaintiff and putative Class members to work in excess of eight hours per day and forty hours per week, but do not compensate them at an overtime rate for this work. Furthermore, Defendants regularly do not compensate Plaintiff and the putative Class members at a double time rate for hours worked in excess of twelve hours each day or after eight hours on the seventh consecutive day of work.

181.  Plaintiff and putative Class members work overtime hours for Defendants without being paid overtime premiums in violation of the Labor Code, applicable IWC Wage Orders, and other applicable law.

182.  Defendants knowingly and willfully refuse to perform their obligation to compensate Plaintiff and the putative Class members for all premium wages for overtime work. As a proximate result of the aforementioned violations, Defendants have damaged Plaintiff and the putative Class members in amounts to be determined according to proof at time of trial.

183.  Defendants are liable to Plaintiff and the Classes alleged herein for the unpaid overtime and civil penalties, with interest thereon.  Furthermore, Plaintiff is entitled to an award of attorneys' fees and costs as set forth below.

184.  Wherefore, Plaintiff and the Classes request relief as hereinafter provided.

### TENTH CAUSE OF ACTION
**Failure to Authorize and Permit and/or Make Available Meal and Rest Periods
Pursuant to Labor Code §§ 226.7 and 512 - For Work at Refineries in California**

185.  Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

186.  This claim is brought by Plaintiff on behalf of the California CertifiedSafety Class, the California Chevron Class, and the California Valero Class against CertifiedSafety, Chevron Corporation, Chevron U.S.A. Inc., Valero Energy Corporation, and Valero Refining Company-California.

187.  Defendants routinely do not make meal periods available to Plaintiff and putative Class members working at refineries in California.  Despite long work days regularly lasting in excess of twelve hours, Plaintiff and putative Class members are often unable to take a meal break, are often prevented from timely taking a meal break, and are frequently interrupted during their meal breaks.  When Plaintiff and putative Class members work more than ten hours in a day, Defendants often do not make a second meal period available to them.

188.  Plaintiff and putative Class members are not paid one hour of premium pay for the missed breaks.  Rather, Defendants deduct thirty minutes of pay on a daily basis for meal

40

1    periods, even though Plaintiff and putative Class members are routinely denied compliant meal

2    periods.

3         189.  Similar to meal periods, Defendants regularly fail to make rest periods available to

4    Plaintiff and putative Class members.  Plaintiff's and putative Class members' schedules

5    regularly prevent them from taking rest periods throughout the day.  When available, if ever,

6    they are often not compliant.  Instead, they are generally untimely or short.  Plaintiff and putative

7    Class members do not receive premium pay for their missed breaks as required by California

8    law.

9         190.  Labor Code §§ 226.7 and 512 and the applicable Wage Orders require Defendants

10   to authorize and permit meal and rest periods to their employees.  Labor Code §§ 226.7 and 512

11   and the Wage Orders prohibit employers from employing an employee for more than five hours

12   without a meal period of not less than thirty minutes, and from employing an employee more

13   than ten hours per day without providing the employee with a second meal period of not less

14   than thirty minutes.  Labor Code § 226.7 and the applicable Wage Orders also require employers

15   to authorize and permit employees to take ten minutes of net rest time per four hours or major

16   fraction thereof of work, and to pay employees their full wages during those rest periods.  Unless

17   the employee is relieved of all duty during the thirty-minute meal period and ten-minute rest

18   period, the employee is considered "on duty" and the meal or rest period is counted as time

19   worked under the applicable Wage Orders.

20        191.  Under Labor Code § 226.7(b) and the applicable Wage Orders, an employer who

21   fails to authorize, permit, and/or make available a required meal period must, as compensation,

22   pay the employee one hour of pay at the employee's regular rate of compensation for each

23   workday that the meal period was not authorized and permitted.  Similarly, an employer must

24   pay an employee denied a required rest period one hour of pay at the employee's regular rate of

25   compensation for each workday that the rest period was not authorized and permitted and/or not

26   made available.

27

28

192.  Despite these requirements, Defendants knowingly and willfully refuse to perform their obligations to authorize and permit and/or make available to Plaintiff and the Classes the ability to take the off-duty meal and rest periods to which they were entitled.  Defendants fail to pay Plaintiff and the Classes one hour of pay for each off-duty meal and/or rest periods that they are denied.  Defendants' conduct described herein violates Labor Code §§ 226.7 and 512. Therefore, pursuant to Labor Code § 226.7(b), Plaintiff and the putative Classes are entitled to compensation for the failure to authorize and permit and/or make available meal and rest periods, plus interest, attorneys' fees, expenses and costs of suit.

193.  As a proximate result of the aforementioned violations, Plaintiff and the putative Classes have been damaged in an amount according to proof at time of trial.

194.  Wherefore, Plaintiff and the putative Classes request relief as hereinafter provided.

## ELEVENTH CAUSE OF ACTION
### Failure to Reimburse for Necessary Business Expenditures Pursuant to Labor Code § 2802 - For Work at Refineries in California

195.  Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

196.  This claim is brought by Plaintiff on behalf of the California CertifiedSafety Class, the California Chevron Class, and the California Valero Class against CertifiedSafety, Chevron Corporation, Chevron U.S.A. Inc., Valero Energy Corporation, and Valero Refining Company-California.

197.  Defendants do not reimburse Plaintiff and putative Class members for necessary business expenditures incurred while working at refineries in California.

198.  Labor Code § 2802 provides, in relevant part:

> An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful. … For the purposes of this section, the term "necessary expenditures or losses" shall include all reasonable costs, including, but not limited to, attorney's

42

1    fees incurred by the employee enforcing the rights granted by this section.

2    199.  Defendants regularly require Plaintiff and putative Class members to pay out-of-

3    pocket expenses for transportation, lodging, and food when traveling to assigned work sites.

4    Defendants often promise to reimburse Plaintiff for these per diems and travel expenses, but

5    often fail to do so.  Additionally, Defendants attempt to have Plaintiff and putative Class

6    members illegally waive their right to reimbursement for travel expenses.  Even when

7    Defendants reimburse Plaintiff and Class members for these expenses, the amount reimbursed

8    are often insufficient to cover the total cost of travel.

9    200.  Furthermore, Defendants regularly require Plaintiff and putative Class members to

10   pay out-of-pocket expenses for personal protective equipment, including but not limited to boots,

11   and for the cost of washing this equipment.  Defendants do not reimburse Plaintiff and the

12   putative Class members for these expenditures.

13   201.  Defendants are liable to Plaintiff and the putative Class members for the

14   unreimbursed expenses and civil penalties, with interest thereon.  Furthermore, Plaintiff is

15   entitled to an award of attorneys' fees and costs as set forth below.

16   202.  Wherefore, Plaintiff and the putative Classes request relief as hereinafter provided.

17   **TWELFTH CAUSE OF ACTION**

18   **Failure to Provide Accurate Itemized Wage Statements Pursuant to Labor Code § 226 - For Work at Refineries in California**

19   203.  Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set

20   forth herein.

21   204.  This claim is brought by Plaintiff on behalf of the California CertifiedSafety Class,

22   the California Chevron Class, and the California Valero Class against CertifiedSafety, Chevron

23   Corporation, Chevron U.S.A. Inc., Valero Energy Corporation, and Valero Refining Company-

24   California.

25   205.  Defendants do not provide Plaintiff and putative Class members with accurate

26   itemized wage statements as required by California law for their work at refineries in California.

27

28

206.  Labor Code § 226(a) provides:

> Every employer shall, semimonthly or at the time of each payment of wages,
> furnish each of his or her employees, either as a detachable part of the check,
> draft, or voucher paying the employee's wages, or separately when wages are
> paid by personal check or cash, an accurate itemized statement in writing
> showing (1) gross wages earned, (2) total hours worked by the employee,
> except for any employee whose compensation is solely based on a salary and
> who is exempt from payment of overtime under subdivision (a) of Section
> 515 or any applicable order of the Industrial Welfare Commission, (3) the
> number of piece-rate units earned and any applicable piece rate if the
> employee is paid on a piece-rate basis, (4) all deductions, provided that all
> deductions made on written orders of the employee may be aggregated and
> shown as one item, (5) net wages earned, (6) the inclusive dates of the period
> for which the employee is paid, (7) the name of the employee and his or her
> social security number, (8) the name and address of the legal entity that is the
> employer, and (9) all applicable hourly rates in effect during the pay period
> and the corresponding number of hours worked at each hourly rate by the
> employee.  The deductions made from payments of wages shall be recorded
> in ink or other indelible form, properly dated, showing the month, day, and
> year, and a copy of the statement or a record of the deductions shall be kept
> on file by the employer for at least four years at the place of employment or
> at a central location within the State of California.

207.  The IWC Wage Orders also establishes this requirement.  (*See* IWC Wage Order
16-2001(6).)

208.  Labor Code § 226(e) provides:

> An employee suffering injury as a result of a knowing and intentional failure
> by an employer to comply with subdivision (a) is entitled to recover the greater
> of all actual damages or fifty dollars ($50) for the initial pay period in which a
> violation occurs and one hundred dollars ($100) per employee for each violation
> in a subsequent pay period, not exceeding an aggregate penalty of four thousand
> dollars ($4,000), and is entitled to an award of costs and reasonable attorney's
> fees.

Plaintiff seeks to recover actual damages, costs and attorneys' fees under this section.

209.  Defendants do not provide timely, accurate itemized wage statements to Plaintiff
and putative Class members in accordance with Labor Code § 226(a) and the IWC Wage Orders.
The wage statements Defendants provide their employees, including Plaintiff and putative Class
members, do not accurately reflect the actual hours worked, actual gross wages earned, or actual
net wages earned.

210.  Defendants are liable to Plaintiff and the putative Classes alleged herein for the amounts described above in addition to the civil penalties set forth below, with interest thereon. Furthermore, Plaintiff is entitled to an award of attorneys' fees and costs as set forth below, pursuant to Labor Code § 226(e).

211.  Wherefore, Plaintiff and the putative Classes request relief as hereinafter provided.

## THIRTEENTH CAUSE OF ACTION
### Waiting Time Penalties Pursuant to Labor Code §§ 201-203 - For Work at Refineries in California

212.  Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

213.  This claim is brought by Plaintiff on behalf of the California CertifiedSafety Class, the California Chevron Class, and the California Valero Class against CertifiedSafety, Chevron Corporation, Chevron U.S.A. Inc., Valero Energy Corporation, and Valero Refining Company-California.

214.  Defendants do not provide Plaintiff and putative Class members with their wages for their work at refineries in California when due under California law after their employment with Defendants ends.

215.  Labor Code § 201 provides:

> If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.

216.  Labor Code § 202 provides:

> If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

217.  Labor Code § 203 provides, in relevant part:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee

shall continue as a penalty from the due date thereof at the same rate
until paid or until an action therefor is commenced; but the wages shall not
continue for more than 30 days.

218.  Plaintiff and putative Class members left their employment with Defendants during the statutory period, at which time Defendants owed them unpaid wages.  These earned, but unpaid, wages derive from time spent working for the benefit of Defendants, which went unrecorded and/or uncompensated.

219.  Defendants willfully refuse to pay putative Class members all the wages that are due and owing to them, in the form of uncompensated off-the-clock time, minimum wage, overtime, meal and rest period premium pay, and reimbursement for necessary business expenditures upon the end of their employment as a result of Defendants' willful failure to provide Plaintiff and the putative Class members with payment for all hours worked, overtime, and meal and rest breaks.  As a result of Defendants' actions, Plaintiff and putative Class members have suffered and continue to suffer substantial losses, including lost earnings, and interest.

220.  Defendants' willful failure to pay Plaintiff and putative Class members the wages due and owing them constitutes a violation of Labor Code §§ 201-202.  As a result, Defendants are liable to Plaintiff and proposed Class members for all penalties owing pursuant to Labor Code §§ 201-203.

221.  In addition, Labor Code § 203 provides that an employee's wages will continue as a penalty up to thirty days from the time the wages were due.  Therefore, the Plaintiff and putative Class members are entitled to penalties pursuant to Labor Code § 203, plus interest.

222.  Wherefore, Plaintiff and the Classes request relief as hereinafter provided.

## FOURTEENTH CAUSE OF ACTION
### Violation of California Business and Professions Code § 17200, *et seq.*

223.  Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Marcellous Ross v. CertifiedSafety, Inc., et al.*

224.  This claim is brought by Plaintiff on behalf of the California Training Class, the California CertifiedSafety Class, the California Chevron Class, and the California Valero Class against CertifiedSafety, Chevron Corporation, Chevron U.S.A. Inc., Valero Energy Corporation, and Valero Refining Company-California.

225.  California Business and Professions Code § 17200, *et seq.* (the "UCL") prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business acts or practices.

226.  Business and Professions Code § 17204 allows a person injured by the unfair business acts or practices to prosecute a civil action for violation of the UCL.

227.  Labor Code § 90.5(a) states it is the public policy of California to vigorously enforce minimum labor standards in order to ensure employees are not required to work under substandard and unlawful conditions, and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

228.  Defendants have committed acts of unfair competition as defined by the UCL, by engaging in the unlawful, unfair, and fraudulent business acts and practices described in this Complaint, including, but not limited to:

    a.  violations of Labor Code § 1194 and IWC Wage Order 16-2001 pertaining to payment of wages, including minimum wage, for all hours worked;

    b.  violations of Labor Code § 510 and Wage Order 16-2001 pertaining to overtime;

    c.  violations of Labor Code §§ 226.7 and 512 and Wage Order 16-2001 pertaining to meal and rest breaks;

    d.  violations of Labor Code § 226 regarding accurate, timely itemized wage statements;

    e.  violations of Labor Code § 2802 regarding indemnification for necessary business expenditures; and

    f.  violations of Labor Code §§ 201-203.

229. The violations of these laws and regulations, as well as of the fundamental California public policies protecting wages, serve as unlawful predicate acts and practices for purposes of Business and Professions Code §§ 17200 *et seq.*

230. The acts and practices described above constitute unfair, unlawful, and fraudulent business practices, and unfair competition, within the meaning of Business and Professions Code §§ 17200 *et seq.* Among other things, the acts and practices have taken from Plaintiff and the Class wages rightfully earned by them, while enabling Defendants to gain an unfair competitive advantage over law-abiding employers and competitors.

231. Business and Professions Code § 17203 provides that a court may make such orders or judgments as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition. Injunctive relief is necessary and appropriate to prevent Defendants from repeating the unlawful, unfair, and fraudulent business acts and practices alleged above.

232. As a direct and proximate result of the aforementioned acts and practices, Plaintiff and the Class members have suffered a loss of money and property, in the form of unpaid wages which are due and payable to them.

233. Business and Professions Code § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition. Plaintiff and the Classes are entitled to restitution pursuant to Business and Professions Code § 17203 for all wages and payments unlawfully withheld from employees during the four-year period prior to the filing of this Complaint. Plaintiff's success in this action will enforce important rights affecting the public interest and in that regard Plaintiff sues on behalf of themselves as well as others similarly situated. Plaintiff and putative Class members seek and are entitled to unpaid wages, declaratory and injunctive relief, and all other equitable remedies owing to them.

234. Plaintiff herein takes upon himself enforcement of these laws and lawful claims. There is a financial burden involved in pursuing this action, the action is seeking to vindicate a

1    public right, and it would be against the interests of justice to penalize Plaintiff by forcing them

2    to pay attorneys' fees from the recovery in this action.  Attorneys' fees are appropriate pursuant

3    to Code of Civil Procedure §1021.5 and otherwise.

4        235.  Wherefore, Plaintiff and the putative Classes request relief as hereinafter provided.

5                              **PRAYER FOR RELIEF**

6         WHEREFORE, Plaintiff prays for relief as follows:

7    a)   Damages and restitution according to proof at trial for all unpaid wages and other injuries,

8         as provided by the FLSA, California Labor Code, and other laws of the State of

9         California;

10   b)   For a declaratory judgment that Defendants have violated the FLSA, California Labor

11        Code, the laws of the State of California, and public policy as alleged herein;

12   c)   For a declaratory judgment that Defendants have violated the UCL, California Business

13        and Professions Code § 17200 *et seq.*, as a result of the aforementioned violations of the

14        California Labor Code and of California public policy protecting wages;

15   d)   For preliminary, permanent, and mandatory injunctive relief prohibiting Defendants, their

16        officers, agents, and all those acting in concert with them from committing in the future

17        those violations of law herein alleged;

18   e)   For an equitable accounting to identify, locate, and restore to all current and former

19        employees the wages they are due, with interest thereon;

20   f)   For an order awarding Plaintiff and the Classes and Collective members compensatory

21        damages, including lost wages, earnings, liquidated damages, and other employee

22        benefits, restitution, recovery of all money, actual damages, and all other sums of money

23        owed to Plaintiff and members of the Classes, together with interest on these amounts,

24        according to proof;

25   g)   For an order awarding Plaintiff, Classes, and members of the Collective civil penalties

26        pursuant to the FLSA, California Labor Code, and the laws of the State of California,

27        with interest thereon;

28

49

h) For an award of reasonable attorneys' fees as provided by the FLSA, California Labor Code, California Code of Civil Procedure § 1021.5, the laws of the State of California, and/or other applicable law;

i) For all costs of suit;

j) For interest on any damages and/or penalties awarded, as provided by applicable law; and

k) For such other and further relief as this Court deems just and proper.

Dated: July 18, 2018                          Respectfully submitted,

                                              */s/ Carolyn Hunt Cottrell*
                                              Carolyn Hunt Cottrell
                                              David C. Leimbach
                                              Michelle S. Lim
                                              Scott L. Gordon
                                              SCHNEIDER WALLACE
                                              COTTRELL KONECKY
                                              WOTKYNS LLP

                                              Attorneys for Plaintiff and the Putative Classes and Collective

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Marcellous Ross v. CertifiedSafety, Inc., et al.*

1

**DEMAND FOR JURY TRIAL**

2

      Plaintiff hereby demands a jury trial on all claims and issues for which Plaintiff is entitled

3

to a jury.

4

5

Dated:  July 18, 2018                                     Respectfully submitted,

6

                                                 */s/ Carolyn Hunt Cottrell*

7

                                                 Carolyn Hunt Cottrell
David C. Leimbach

8

Michelle S. Lim
Scott L. Gordon

9

SCHNEIDER WALLACE
COTTRELL KONECKY

10

WOTKYNS LLP

11

Attorneys for Plaintiff and the Putative Classes and
Collective

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Marcellous Ross v. CertifiedSafety, Inc., et al.*